**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**MARLON A. HOWSON, Defendant**

Criminal No. F213/2006

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

May 29, 2007

SAMANTHA MATHURIN, ESQ., Assistant Attorney General, V.I. Department of Justice, St. Thomas, V.I., *Attorney for the People.*

SAMUEL L. JOSEPH, ESQ., Assistant Territorial Public Defender, Office of the Territorial Public Defender, St. Thomas, V.I., *Attorney for Defendant.*

KENDALL, *Judge*

## MEMORANDUM OPINION

(May 29, 2007)

THIS MATTER came on for Bench Trial on Monday, March 26, 2007 before the undersigned judge. Defendant was charged with Simple Assault, in violation of 14 V.I.C. § 292 and 14 V.I.C. § 299(2). The Court, having heard the testimony of the witnesses and the arguments of

Counsel, finds that the People have failed to prove the Defendant's guilt beyond a reasonable doubt.

## FACTS

In the early morning of May 26, 2006, Mr. Jamal Carroll was at the Offshore Bar and Cyber Cafe in Havensight, St. Thomas with some friends when he was approached by some other friends, viz., Vernon Aruso, Jeremy Grant, and Ian Woods, who told them they had recently been in an altercation with several individuals during which the rear window of Mr. Grant's car was broken. Shortly thereafter, several Jeep Wranglers passed by Mr. Carroll's group and the occupants of the jeeps shouted obscenities at them. Mr. Carroll testified that he saw some of the people driving the jeeps, but he did not know them and had never seen them before this incident.

Shortly thereafter, Nick Wilkerson, who was with Mr. Carroll, offered to drive him and his friends to the "Sky Box" nightclub. Mr. Carroll sat in the back of Mr. Wilkerson's truck with Roger Underwood and Heath Marcell Charles ("Marcell"), while Elijah Hood sat in the front passenger seat. Jeremy Grant, Ian Woods and Vernon Aruso were in another vehicle.

While driving on Veteran's Drive, they saw the Jeep Wranglers that had passed them earlier. In the area of Addelita Cancryn Junior High School, approximately four jeeps surrounded Mr. Wilkerson's truck. One jeep drove in front of the truck and stopped, another jeep stopped on the left side of the truck, and two jeeps were behind the truck. One of the individuals in the jeep came up to Mr. Wilkerson while he was in the driver's seat and punched him through the car window. The other individuals in the jeeps exited, ran to the side of the truck, shook it, banged on its sides, and tried to pull the occupants out of the truck. They also grabbed a metal pipe from the back of Mr. Wilkerson's truck. Mr. Aruso came out of his vehicle and six individuals attempted to jump him. Mr. Carroll came out of the truck to assist Mr. Aruso but was struck twice in the face with the metal pipe and fell to the ground. Mr. Wilkerson testified that there were about three or four individuals kicking and stomping Mr. Carroll in front of Banco Popular, in the eastbound lane, while Marcell testified that there were at least five or six individuals stomping Mr. Carroll. Mr. Wilkerson ran into the crowd with a shoulder charge to get them off Mr. Carroll. Marcell testified that Mr.

300

Carroll was running, semi-conscious, and ran straight into a jeep. The jeep braked, but not in time to avoid hitting Mr. Carroll. Neither Mr. Carroll nor Mr. Wilkerson remember any vehicle hitting the former.

Mr. Carroll suffered a broken rib on his left side and a fractured orbital bone, which required the insertion of two metal plates and 15 screws in his head. He also received a laceration on the top of his forehead which required 9 stitches.

Detective Sofia Raschid was assigned to the case and received descriptions from Mr. Carroll of some of the individuals who had assaulted him. She was unaware of how many individuals were involved. She only knew that it was a group of people, and that they were in rental jeeps. Detective Raschid went to the Cyril E. King Airport and observed a Rastafarian male, later identified as Mr. Ian Small, standing by the American Airlines' ticket counter. He matched the description given by one of the witnesses, so she approached him and asked him if his name was O'Bryan Wilson. He said no, and he then summoned Mr. Wilson. Mr. Wilson and Defendant came over to Detective Raschid, along with four females. She advised them that she was conducting an investigation, and requested that they accompany her. Detective Raschid contacted Mr. Carroll and asked him to come to the airport to identify some individuals. Mr. Carroll went to the airport with his father, Attorney James Carroll, Mr. Wilkerson, Mr. Underwood and Marcell. Detective Raschid directed their attention to the group being held outside of customs, and asked if any of the gentlemen in that group were involved in the altercation. There were three males in the group, including Defendant, and one or two officers standing with them. Mr. Carroll and his friends identified all three males as the individuals involved in the altercation. Mr. Carroll identified Defendant as one of the people who had kicked and stomped him while he was on the ground. Marcell testified that he said, "Yes, that's them," when he saw one that he recognized.

Mr. Wilkerson identified Defendant at the airport as one of the individuals involved in the altercation, but when he went to the investigation bureau and looked at some photographic arrays, he was not able to pick out Defendant. Mr. Carroll was the only person who was able to identify Defendant from the photographic arrays.

## DISCUSSION

 In order to convict Defendant of assaulting Mr. Carroll, the Government must do more than show that Defendant was at the scene of the assault, or in the company of others who had assaulted Mr. Carroll. "Mere presence of a person, when an assault and battery is committed by another ... is not sufficient of itself to charge him as a participator in the assault." *Howell v. Cataldi*, 464 F.2d 272, 282 (3d Cir. 1972). See also *United States v. Butts*, 704 F.2d 701, 704 (3d Cir. 1983) ("mere presence at a given location cannot in and of itself constitute probable cause to arrest"); *United States v. Gordon*, 290 F.3d 539, 543-44 (3d Cir. 2002) (mere presence of the defendant where a crime is being committed is not sufficient to establish aiding and abetting); *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979) ("a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause").

There was no clear identification of Defendant as one of the individuals who had assaulted Mr. Carroll. Mr. Carroll testified that he had never seen Defendant before this incident, and did not know him through any other connections. He identified Defendant as one of the individuals who kicked and stomped him when he was on the ground, but he testified that his eyesight became blurred and he became disoriented after he was struck with the pipe. He had "blacked out" during the melee, and his vision was blurred after he was on the ground. While on the ground, people were kicking and stomping him, but he did not know how many people, and he did not know what was going on around him. He was not even aware that he had been hit by a vehicle.

When Mr. Wilkerson was asked if he saw the people who were kicking Mr. Carroll, he testified that he "mainly saw bodies." Marcell testified that he could not remember faces, since there were so many people and the evening was chaotic. Neither Marcell nor Mr. Wilkerson could pick Defendant out when shown the photographic arrays. Although all of them identified Defendant at the airport, they identified him in conjunction with the other individuals who were with him. Detective Raschid led Mr. Carroll and his friends to the three (3) men who were being detained by officers, and asked them if these men were involved in the altercation. Marcell testified that he identified all of them as being involved after he recognized one of them. Guilt, however, cannot be

established by association. Even if Defendant was traveling with the individuals who had assaulted Mr. Carroll, and even if he was present the evening Mr. Carroll was assaulted, that alone does not prove beyond a reasonable doubt that Defendant himself assaulted Mr. Carroll. Without clear evidence that Defendant, and not merely his friends, committed the assault, a criminal conviction cannot stand.

## CONCLUSION

█ None of the witnesses was able to make a positive identification of Defendant. There is nothing to suggest that the witnesses' identification of Defendant at the airport was based on anything besides his traveling with individuals who had assaulted Mr. Carroll. Mr. Carroll's identification of Defendant as one of the individuals who had kicked him while on the ground is suspect, given his testimony that he was disoriented and his vision blurred after being struck with the pipe, which preceded his falling to the ground and being kicked. Neither Mr. Wilkerson nor Marcell was able to identify Defendant when they were shown photographic arrays. There is no evidence, aside from these questionable identifications, that Defendant actually committed an assault. Accordingly, the People having failed to prove beyond a reasonable doubt that Defendant assaulted Mr. Carroll, it is hereby

ORDERED, ADJUDGED AND DECREED that the Defendant, Marlon Howson, is found "NOT GUILTY" of Simple Assault, in violation of 14 V.I.C. § 292 and 14 V.I.C. § 299(2), and is therefore ACQUITTED of said charge, and it is further

ORDERED, that any bail that has been posted shall be EXONERATED, and it is further

ORDERED, that copies of this Order shall be directed to Assistant Territorial Public Defender Samuel L. Joseph, Assistant Attorney General Samantha Mathurin, and Defendant, Mr. Marlon Howson.