**UNITED STATES of America**

v.

**Monroe BUTTS, Cheyenne Morgan, and John Andrew Passanante.**

**Cheyenne Morgan, Appellant.**

**No. 82–5465.**

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Feb. 17, 1983.

Decided April 14, 1983.

---

702

George E. Schumacher, Federal Public Defender, W. Penn Hackney, Asst. Public Defender, Pittsburgh, Pa., for appellant.

J. Alan Johnson, U.S. Atty., Paul J. Brysh, Asst. U.S. Atty., Pittsburgh, Pa., for appellee.

Before GIBBONS, HUNTER and RO-SENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

Appellant Cheyenne Morgan (Morgan) was convicted of one count of possession of a government check stolen from the mail in violation of the Act of June 25, 1948, 62 Stat. 779, as amended, 18 U.S.C. § 1708. He here challenges his conviction, urging that the police lacked probable cause to arrest him and that the statement they obtained from him following his arrest was therefore inadmissible as evidence. Appellant's contention is meritorious and we reverse.

I.

The events leading to Morgan's arrest occurred as part of an investigation by federal postal inspectors into thefts of United States Treasury checks from the mails. The investigation focused on a photographer's studio, the Chircosta Photo Studio (the Studio) in Pittsburgh, Pennsylvania, where the postal inspectors believed many persons were obtaining the photographic identification necessary to cash the stolen checks. The postal inspectors stationed an agent inside the Studio to observe customers requesting photographic identification cards, and another agent outside the Studio to follow any customer suspected of stealing a Government check.

On April 2, 1982, the date of Morgan's arrest, postal inspector Leverone was stationed inside the Studio. Between 10:00 and 10:30 A.M. Morgan's co-defendants, Monroe Butts and John Passanante, entered the Studio and requested identification cards. The sales clerk gave the men an application form to be filled out. Passanante filled out the form by copying information from a piece of paper given him by Butts. Butts then signed the application and had his photograph taken. After Butts and Passanante left the photo studio, the sales clerk described these events to Leverone, telling him that the men had explained that Butts could not complete the form himself because he had an injured arm.

Finally, she mentioned that she had noticed a green check in Butts' pocket.

Leverone reviewed the application and noted that the address and zip code used on the application were from a neighborhood that had a very high rate of mail theft. He relayed this information via telephone to postal inspector Trainor, who was in charge of the operation and who was located in the postal inspection office. Trainor then radioed two surveillance teams stationed outside the studio and instructed them to follow and apprehend Butts and Passanante.

Two agents, Johnson and Reddington, followed directly behind Butts and Passanante, who were walking along a street. Two more agents, Elder and O'Hara, followed from across the street. Butts and Passanante approached a parked car. The four agents also approached the car and at about this time two of the four agents noticed the check in Butts' pocket. Agent Elder then noticed appellant Morgan sitting in the back seat of the car, and he ordered Morgan out of the car. In the meantime, agent Johnson identified himself to Passanante as a postal inspector, while Reddington began questioning Butts about the check. When Butts told Reddington that the check did not belong to him, Butts, Passanante, and Morgan were all taken down to the postal inspection office for further questioning.

At the postal inspection office, during separate interviews, Butts, Passanante, and Morgan all waived their *Miranda* rights and completed written statements admitting possession of the stolen check. The proceedings at the postal inspector's office took approximately four hours.

Butts, Passanante, and Morgan were subsequently charged with possession of a stolen check and brought to trial in the Western District of Pennsylvania before Judge Cohill. Following a suppression hearing, Judge Cohill ruled that he would not exclude the confessions of any of the three defendants. Each of the defendants then pleaded guilty, reserving the right to appeal the issue concerning admission of the confessions presented at the suppression hearing.[1] In separate orders we have affirmed the convictions of defendants Butts and Passanante,[2] but we now reverse the conviction of defendant Morgan for the reasons discussed below.

## II.

In deciding whether the district court erred by admitting defendant Morgan's confession we must ask two questions. First, we must ask whether the authorities had probable cause to arrest Morgan for constructive possession of a stolen check. Second, we must ask whether, assuming the authorities lacked probable cause, the confession should have been excluded as the fruit of a poisonous tree, or whether some intervening event had purged the taint of the improper arrest thereby rendering the confession admissible. *See Taylor v. Alabama,* —— U.S. ——, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982).

We first address the question of whether the postal authorities had probable cause to arrest Morgan. This question turns on

> whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.

*Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). In the instant case, at the time of the arrests[3] all that the

---

1. For approval of conditional guilty plea procedure, see *United States v. Moskow,* 588 F.2d 882 (3rd Cir.1978), and *United States v. Zudick,* 523 F.2d 848 (3rd Cir.1975).

2. *United States v. Butts,* 703 F.2d 553 (3d Cir. 1983); *United States v. Passanante,* 703 F.2d 552 (3d Cir.1983).

3. The Government and Morgan disagree about the precise time that defendant was placed under arrest. We do not consider this point because the postal authorities learned nothing about Morgan which might have provided probable cause to arrest between the time that they asked him to get out of the car and the time that they arrived at the postal inspection

postal authorities knew about Morgan was that he had been sitting in the back seat of the car which Butts and Passanante approached. Morgan had not accompanied Butts and Passanante on their trip to the Studio. The arresting authorities had no reason to believe that Morgan knew about or was involved in the scheme involving the stolen checks. Morgan might have been sitting in the car simply because he had some unrelated and wholly lawful business with Butts or Passanante.

■ Mere presence at a given location cannot in and of itself constitute probable cause to arrest. As the United States Supreme Court observed in *Ybarra v. Illinois,* 444 U.S. 85, 90, 100 S.Ct. 338, 341, 62 L.Ed.2d 238 (1979):

> [A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be. The Fourth and Fourteenth Amendments protect the "legitimate expectations of privacy" of persons, not places.

444 U.S. at 91, 100 S.Ct. at 342 (citations deleted). Thus, Morgan's mere presence in

the parked car could not have constituted probable cause to arrest.[4]

Having concluded that Morgan was arrested without probable cause, we must then decide whether the confession obtained from Morgan at the postal inspector's office should have been excluded as the fruit of a poisonous tree or whether the taint of the illegal arrest had been purged by some intervening event. The Supreme Court most recently spoke to this issue in *Taylor v. Alabama,* —— U.S. ——, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982). The *Taylor* Court reaffirmed the pre-existing law in this area. It summarized its previous holdings thus:

> In *Brown v. Illinois,* [422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)], and *Dunaway v. New York,* [442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)], the police arrested suspects without probable cause. The suspects were transported to police headquarters, advised of their *Miranda* rights, and interrogated. They confessed within two hours of their arrest. This Court held that the confessions were not admissible at trial, reasoning that a confession obtained through custodial interrogation after an illegal arrest should be excluded unless intervening events break the causal connection between the illegal arrest and the confession so that the confession is " 'sufficiently an act of free will to purge the primary taint.' " *Brown v. Illinois,* 422 U.S. at 602 [95 S.Ct. at 2261] (quoting *Wong Sun v. United States,* 371 U.S. 471, 486

---

office. The precise time of arrest was therefore immaterial.

4. The case of *United States v. Arce,* 633 F.2d 689 (5th Cir.1980), *cert. denied,* 451 U.S. 972, 101 S.Ct. 2051, 68 L.Ed.2d 351 (1981), cited in the Government's brief on appeal, is distinguishable from the instant case. In *Arce,* one of several co-defendants, Tony Coronado, appealed his conviction on the ground that he had been arrested without probable cause. The facts of *Arce* resemble the facts of the instant case insofar as both cases involved schemes to cash stolen Treasury checks through the procurement of false identification. In both cases federal authorities apprehended the wrongdoers through surveillance of a photographer's studio which provided photographic identification. The factual similarity between the two

cases ends here however. Coronado, unlike appellant Morgan, sat in a car directly across the street from the photographer's studio for some time. He maintained constant visual surveillance of the studio while his co-defendants obtained false identification inside. At one point, one of the co-defendants obtaining false identification came out of the studio, nodded toward the car in which Coronado was sitting, and stared at the car for approximately thirty minutes. Subsequently, Coronado drove away from the studio at the same time and in the same direction as the co-defendants who had obtained the false identification. All of this showed a purposeful coordination of activity not present where appellant Morgan is concerned.

[83 S.Ct. 407, 416, 9 L.Ed.2d 441] (1963)). See also *Dunaway v. New York,* 442 U.S. at 217 [99 S.Ct. at 2259]. This Court identified several factors that should be considered in determining whether a confession has been purged of the taint of the illegal arrest: "the temporal proximity of the arrest and the confession, the presence of intervening circumstances, ... and, particularly, the purpose and flagrancy of the official misconduct." *Brown v. Illinois,* 422 U.S. at 603–604 [95 S.Ct. at 2261–2262] (citations omitted); *Dunaway v. New York,* 442 U.S. at 218 [99 S.Ct. at 2259]. The State bears the burden of proving that a confession is admissible. *Ibid.*

102 S.Ct. at 2667.[5]

Applying the rule of *Taylor* to the instant case, we find that the Government failed to carry its burden of proving that the taint of Morgan's illegal arrest had been purged prior to the time of his confession. Morgan confessed fewer than four hours after he was brought to the postal inspector's office. Nowhere in its brief to this court does the Government suggest that any meaningful event occurred within those few hours which could have purged the taint of an illegal arrest. At the time that the police arrested Morgan, they knew absolutely nothing about him except that he had been sitting in a car which Butts and Passanante were about to enter. Although Morgan's subsequent confession at the postal inspection office may have been voluntary for fifth amendment purposes "in the sense that *Miranda* warnings were given and understood, [this] is not by itself sufficient to purge the taint of the illegal arrest." *Taylor v. Alabama, supra,* 102 S.Ct. at 2667; see also *Florida v. Royer, supra,* —— U.S. at ——, 103 S.Ct. at 1324. Such a finding of voluntariness "is merely a threshold requirement for the Fourth Amendment analysis." *Taylor v. Alabama, supra,* 102 S.Ct. at 2667. We therefore conclude that Morgan's confession should have been excluded at trial.

The case will be reversed and remanded for proceedings not inconsistent with this opinion.

---

5. Recently, in *Florida v. Royer,* —— U.S. ——, ——, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983), the Supreme Court reaffirmed the rule laid down in *Dunaway, supra.*