**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| EDUARDO MENDEZ | : | |
| | : | |
| Appellant | : | No. 2568 EDA 2022 |

Appeal from the Judgment of Sentence Entered July 15, 2022
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0001707-2021

BEFORE: OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED OCTOBER 24, 2023**

Appellant, Eduardo Mendez, appeals from the judgment of sentence entered in the Bucks County Court of Common Pleas, following his jury trial convictions for two counts of possession with intent to deliver a controlled substance ("PWID"), possession of a controlled substance, possession of drug paraphernalia, and criminal conspiracy.[1]  We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.  (*See* Trial Court Opinion, filed 12/15/22, at 1-5).

Appellant raises the following issues for our review:

> Were the verdicts of guilty not supported by sufficient evidence?

---

[1] 35 P.S. §§ 780-113(a)(30), (16), (32), and 18 Pa.C.S.A. § 903, respectively.

Did the [trial] court err in holding that Appellant's arrest was supported by probable cause?

Did the trial court err in precluding Appellant from presenting evidence that he was represented by the Bucks County Public Defender's Office?

Did the trial court abuse its discretion in sentencing Appellant by imposing a manifestly excessive sentence at the high end of the aggravated range, relying on improper factors and the nature of the offense and failing to consider all relevant factors?

(Appellant's Brief at 10) (reordered for purposes of disposition).

Our standard of review for sufficiency claims is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Tucker*, 143 A.3d 955, 964 (Pa.Super. 2016), *appeal denied*, 641 Pa. 63, 165 A.3d 895 (2017) (quoting *Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011)).

Additionally, the following principles govern our review of an order denying a motion to suppress:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Ford*, 175 A.3d 985, 989 (Pa.Super. 2017), *appeal denied*, 647 Pa. 522, 190 A.3d 580 (2018).

Our standard of review of a trial court's admission or exclusion of evidence is well established and very narrow:

> Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion. Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record.

*Commonwealth v. M. Montalvo*, 604 Pa. 386, 403, 986 A.2d 84, 94 (2009), *cert. denied*, 562 U.S. 857, 131 S.Ct. 127, 178 L.Ed.2d 77 (2010) (internal

citations and quotation marks omitted). When reviewing the denial of a motion *in limine*, we apply the same standard as to other evidentiary rulings. ***Commonwealth v. Sami***, 243 A.3d 991, 997 (Pa.Super. 2020) (noting that motion *in limine* is procedure for obtaining ruling on admissibility of evidence prior to trial).

"The threshold inquiry with the admission of evidence is whether the evidence is relevant." ***Commonwealth v. Stokes***, 78 A.3d 644, 654 (Pa.Super. 2013), *appeal denied*, 625 Pa. 636, 89 A.3d 661 (2014). "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." ***Id.* See also** Pa.R.E. 401 (defining relevant evidence). Nevertheless, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Further, "[c]hallenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right." ***Commonwealth v. Phillips***, 946 A.2d 103, 112 (Pa.Super. 2008), *cert. denied*, 556 U.S. 1264, 129 S.Ct. 2450, 174 L.Ed.2d 240 (2009). Prior to reaching the merits of a discretionary aspects of sentencing issue:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P

902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (quoting *Commonwealth v. Hyland*, 875 A.2d 1175, 1183 (Pa.Super. 2005)). When appealing the discretionary aspects of a sentence, an appellant must invoke this Court's jurisdiction by including in his brief a separate concise statement demonstrating a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f).

This Court reviews discretionary sentencing challenges based on the following standard:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, bias or ill-will.

*Commonwealth v. McNabb*, 819 A.2d 54, 55 (Pa.Super. 2003) (quoting *Commonwealth v. Hess*, 745 A.2d 29, 30-31 (Pa.Super. 2000)).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Brian T.

- 5 -

McGuffin, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented.

Regarding Appellant's sufficiency of the evidence claims, the court initially found that Appellant waived these claims by failing to specify in his Rule 1925(b) statement the elements of each crime that he alleges was insufficient to sustain each conviction, particularly where Appellant raised sufficiency challenges to multiple offenses. (*See* Trial Court Opinion at 8). The court further found that even if Appellant had properly preserved his claims, Appellant's sufficiency arguments lacked merit. Specifically, the Commonwealth presented sufficient evidence to establish the existence of a conspiracy between Appellant and his co-conspirator, Giovanni Rosales, where Appellant travelled approximately 1,500 miles from Texas to Pennsylvania with Mr. Rosales, drove Mr. Rosales to the "sample buy," carried the black backpack in which the drugs were found into a hotel room that Mr. Rosales rented for the day, remained in the room with Mr. Rosales for hours while Mr. Rosales set up a subsequent "bulk buy," and left the room with Mr. Rosales at approximately the time when the "bulk buy" was scheduled to occur. The court noted that proof of a conspiracy between Appellant and Mr. Rosales negates the need to prove that Appellant constructively possessed the controlled substances and paraphernalia to sustain his remaining convictions. In any event, the court found that the Commonwealth presented sufficient

evidence to establish Appellant's constructive possession of the drugs because a surveillance video showed Appellant carrying an air compressor and the backpack containing the drugs into the hotel room. Viewed in the light most favorable to the Commonwealth as the verdict winner, Appellant's physical handling of the drugs and the surrounding circumstances of Appellant's involvement with Mr. Rosales throughout the day was sufficient to demonstrate that Appellant had the ability and intent to exercise control over the contraband.[2] (**See id.** at 9-14).

Regarding Appellant's claim that the court erred in denying his motion to suppress evidence of his flight prior to arrest and the $3,300.00 found on his person, the court found that the police officers had probable cause to arrest Appellant. Prior to his arrest, police observed Appellant drive Mr. Rosales to the "sample buy," remain with him for the remainder of the day while an additional transaction was set up, carry a bag and an air compressor into a hotel room with Mr. Rosales, look up and down the hallway with Mr. Rosales multiple times, and leave the room together at approximately the time of the second sale. Here, the circumstances clearly demonstrate that police had

_____

[2] Additionally, the Commonwealth presented the testimony of Detective Jarrod Eisenhauer, who was qualified as an expert in the field of drug trafficking investigations. Detective Eisenhauer testified that typically when there are two individuals involved in a transaction, the higher-ranking individual will attempt to insulate himself from exposure and the lower-ranking individual will handle the drugs during the sale and undertake tasks such as securing lodging.

probable cause to suspect that Appellant was not merely present but participating in the criminal activity.[3] (*Id.* at 15-16).

With respect to Appellant's claim that the court erred in denying his motion in *limine* seeking to present evidence that Appellant's counsel was a public defender, the court determined that Appellant failed to establish that he was entitled to introduce such evidence for the purpose of suggesting to the jury that he was indigent. The court further found that introduction of such evidence risked confusing the jury and increased the likelihood that the verdict would not be based on the facts presented but rather on Appellant's perceived economic status. (*See* Trial Court Opinion at 16-17).

The court further explained that it acted within its discretion in

---

[3] Appellant cites to **United States v. Butts**, 704 F.2d 701 (3rd Cir. 1983) and **Commonwealth v. Shaw**, 476 Pa. 543, 383 A.2d 496 (1978) to support his claim that the police did not have probable cause. In **Butts**, the U.S. Court of Appeals for the Third Circuit determined that probable cause did not exist to arrest the defendant who was merely sitting in the backseat of a car that the individuals being surveilled were about to enter. The Court noted that at the time of the arrest, the police officers who arrested the defendant had no other information about him and did not know what connection he had to the individuals who the police suspected of criminal activity. In **Shaw**, our Supreme Court found that probable cause did not exist where the only information the police had about the defendant was a general statement that he associated with the perpetrators of the crime. Our Supreme Court noted that police officers did not have any information to indicate that the defendant was at the scene of the crime or involved with the criminal activity. Here, Appellant was present at the first sale, remained with Mr. Rosales the whole day while Mr. Rosales set up the second sale, and left with Mr. Rosales in time for the second sale. Accordingly, the instant case is factually distinguishable from both **Butts** and **Shaw**.

sentencing Appellant.[4]  At the sentencing hearing, the court stated that it took into consideration Appellant's personal history, his rehabilitative needs, and the letters from his mother and sister but ultimately found that Appellant's criminal history, his refusal to take accountability and the impact of his actions on the community warranted a sentence in the aggravated range.  (***See*** Trial Court Opinion at 20-22).  Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/24/2023

_____

[4] Appellant filed a timely notice of appeal, preserved his claim in a timely post-sentence motion, and included in his brief a Rule 2119(f) statement.  As presented, Appellant's claim concerning an excessive sentence in combination with the court's failure to consider certain mitigating factors and reliance on impermissible factors arguably raises a substantial question.  ***See Commonwealth v. Raven***, 97 A.3d 1244, 1253 (Pa.Super. 2014), *appeal denied*, 629 Pa. 636, 105 A.3d 736 (2014) (stating: ""[A]n excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question").  ***See also Commonwealth v. Trimble***, 615 A.2d 48 (Pa.Super. 1992) (holding defendant's claim that court failed to consider factors set forth under Section 9721(b) and focused solely on seriousness of defendant's offense raised substantial question).

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA   :   No.: CP-09-CR-0001707-2021

:

:   Appellate No.: 2568 EDA 2022

V.   :

:

:

EDUARDO MENDEZ   :

### OPINION

Appellant Eduardo Mendez appeals from this Court's Judgement of Sentence entered on July 15, 2022, following this Court's September 9, 2022 Denial of Appellant's Post-Sentence Motions filed July 22, 2022. Appellant filed this appeal on October 6, 2022. This Court files this opinion in accordance with Pa.R.A.P. 1925(a).

### PROCEDURAL & FACTUAL BACKGROUND

This case arises from a series of incidents that occurred on December 4, 2020, in Philadelphia, Philadelphia County, Pennsylvania and Bensalem, Bucks County, Pennsylvania. On the morning of December 3, 2020, Appellant Eduardo Mendez, a resident of El Paso, Texas, met with Giovanni Rosales[1] and the pair of them drove over the course of around twenty (20) hours the approximately one-and-a-half-thousand (1,500) miles from El Paso to Bensalem, Pennsylvania for the purpose of selling bulk 'uncut' quantities of both heroin and methamphetamine. N.T. 4/12/2022, p. 72, *passim*; N.T. 4/13/2022, *passim*. Upon arriving at a Holiday Inn Express in Bensalem Township on December 4, 2020, Mr. Rosales rented Room 348 for only one day, using his Passport issued from Mexico, as identification. N.T. 4/11/2022, p. 54. Both Appellant and Mr.

---

[1] While referred to throughout the Notes of Testimony ("N.T.") as Appellant's co-defendant, Giovanni Rosales pled guilty before Appellant's trial, including to one count of Conspiracy.

1

Rosales retrieved items including a black backpack, an air compressor, and a large toolbox from a silver GMC pickup truck registered to Mr. Rosales and carried them up to Room 348 at approximately 8:24 A.M. on December 4, 2020. N.T. 4/12/2022, pp. 129, 225. Mr. Rosales wheeled the large tool chest behind him, while Appellant transported the air compressor with the black backpack on his right shoulder. N.T. 4/12/2022, p. 225.

A short time later, both Appellant and Mr. Rosales left Room 348 and returned to Mr. Rosales' silver GMC pickup truck in the parking lot. Appellant got in the driver's seat and drove both of them to a Dunkin' Donuts parking lot located in the Roosevelt Mall at Cottman and Roosevelt Boulevard in Northeast Philadelphia arriving around noon. N.T. 4/11/2022 p. 42; N.T. 4/12/2022, p. 97. Appellant pulled the pickup into a parking space, whereupon Mr. Rosales exited the passenger door, walked down a few parking spaces and past one parked vehicle, and got into the passenger door of a parked vehicle. N.T. 4/12/2022, pp. 104 – 105. Unbeknownst to Mr. Rosales, the driver of the vehicle he entered was a Confidential Human Source ("CHS") – an informant – for the Federal Bureau of Investigation. N.T. 4/12/2022, p. 105. Mr. Rosales spoke with the CHS for approximately 90 seconds and handed them two small bundles, one containing heroin and the other methamphetamine. N.T. 4/12/2022, p. 106; C-1; C-4; C-5. The CHS did not provide compensation for the controlled substances provided in this 'sample transaction.' Mr. Rosales then exited the CHS's vehicle, returned to his pickup truck, and Appellant drove them both to a Liberty Gas Station. N.T. 4/12/2022, p. 147. A short time later, Appellant drove from the gas station to a Bob Evans restaurant located next to the Holiday Inn Express in Bensalem. N.T. 4/12/2022, p. 128. After spending approximately 30 minutes inside the Bob Evans, Appellant and Mr. Rosales exited the restaurant, returned to Mr. Rosales's pickup truck, and drove back to the Holiday Inn Express parking lot next door. N.T. 4/12/2022, p. 149.

2

Appellant and Mr. Rosales returned to Room 348. N.T. 4/12/2022, pp. 149 – 150. They both remained inside for the next few hours, with both Appellant and Mr. Rosales exiting briefly to look up and down the hallway, and Appellant leaving to purchase an item at the 3rd floor vending machine. N.T. 4/11/2022, p. 41; N.T. 4/12/2022, p. 244. During this time, while both Appellant and Mr. Rosales were inside Room 348, Mr. Rosales was communicating with the CHS over text messaging and via phone calls. N.T. 4/12/2022, pp. 124 – 125. Mr. Rosales and the CHS arranged another transaction: the CHS was to purchase two kilograms of heroin at a price of $50,000 per kilogram and one pound of methamphetamine at a price of $8,500, for a total price of $108,500. N.T. 4/12/2022, p. 198. The deal was scheduled to occur in the parking lot of the Holiday Inn Express. N.T. 4/12/2022, pp. 126 – 127. The deal was later modified to occur between 5:00 and 5:30 P.M. in the parking lot of a nearby Texas Roadhouse restaurant in Bensalem. N.T. 4/11/2022, p. 46.

From approximately 2:30 P.M. until approximately 4:55 P.M., Officer Farnan of the Bensalem Police Department was inside in Room 347 with other law enforcement officers, watching the door to Room 348 through the peephole. N.T. 4/12/2022, pp. 200 – 204. No one other than Appellant and Mr. Rosales entered or exited the room during that time, and luggage was carried in or out of Room 348. N.T. 4/12/2022 pp. 203 – 204. At roughly 4:55 P.M. on December 4, 2020, Appellant and Mr. Rosales exited their hotel room and exited to the parking lot. N.T. 4/12/2022, p. 204. As they started to walk towards Mr. Rosales' pickup, members of the Violent Gang Safe Streets Task Force of F.B.I.'s Philadelphia field office, Bensalem Township Police officers, and Philadelphia Police officers attempted to arrest Appellant and Mr. Rosales. N.T. 4/12/2022, p. 143. As law enforcement officers attempted to arrest both Appellant and Mr. Rosales, Appellant turned and attempted to run to a wooded area at the end of the parking lot. N.T. 4/12/2022, p. 65. F.B.I. Special Agent William Wickman, driving an unmarked vehicle with active

3

emergency lights, drove next to the fleeing Appellant and commanded him to stop from an open window. N.T. 4/12/2022, p. 66. Appellant kept running, before tripping and was then tackled by agents on foot, taking him into custody. N.T. 4/12/2022, p. 67. When searched, Appellant had no controlled substances and $3,300.00 in United States currency on him. N.T. 4/12/2022, p. 68. Mr. Rosales had neither controlled substances nor money on his person. Id.

A search warrant was executed on Room 348 of the Holiday Inn Express in Bensalem, and a black bookbag was found within the locked large tool chest. N.T. 4/12/2022, pp. 205 – 208; C-12. Inside the bookbag was a clear Ziploc bag of heroin weighing approximately 90 to 100 grams and two half kilograms of methamphetamine. N.T. 4/12/2022, p. 213. A large digital scale was found inside the Husky toolbox underneath the bookbag. N.T. 4/12/2022, p. 216; C-18. Residue found on the digital scale was determined to be composed of controlled substances. N.T. 4/12/2022, p. 255. Plastic film was discovered in a nearby trashcan similar to what was covering the controlled substances. N.T. 4/13/2022, pp. 28 – 29; C-21. Mr. Rosales' DNA was recovered from the covering of the controlled substances. N.T. 4/12/2022, p. 212; C-14. No controlled substances were recovered from Mr. Rosales's vehicle when it was searched. N.T. 4/12/2022, pp. 217 – 218. Notably, in order to fulfill the quantity of the controlled substances that had been negotiated in the deal with the CHS, and there was every indication that was their intent, the Appellant and Mr. Rosales would have had to secure an additional quantity of heroin from someone or somewhere, as the quantity of controlled substances recovered from their hotel room would have been insufficient to meet the quantity of the controlled substances they had agreed to sel. Thus the Conspiracy would have then necessarily involved other people or the acquisition of more controlled substances by the Appellant and Mr. Rosales.. N.T. 4/12/2022, pp. 241, 294-295.

4

Appellant was subsequently charged with the following: Count 1, Possession with Intent to Deliver a Controlled Substance—Heroin, an ungraded felony[2], Possession with Intent to Deliver a Controlled Substance—Methamphetamine, an ungraded felony[3], Criminal Conspiracy, an ungraded misdemeanor[4], Possession of a Controlled Substance—Heroin and/or Methamphetamine, an ungraded misdemeanor[5], Possession of Paraphernalia, an ungraded misdemeanor[6], and Criminal Use of a Communication Facility, a felony of the third degree[7]. Count 6, Criminal Use of a Communication Facility, was nolle prossed at Appellant's Arraignment and was not a component of the trial.

## MATTERS COMPLAINED OF ON APPEAL

Appellant filed a timely Notice of Appeal to the Superior Court on October 6, 2022. On October 7, 2022, this Court issued an Order directing Appellant to file a Concise Statement of Matters Complained of on Appeal within twenty-one (21) days of the date of the Order. On October 18, 2022, Appellant filed a Motion for an extension of time to file his Concise Statement. On October 24, 2022, this Court issued an Order granting Appellant's motion for an extension of time to file and granted Appellant an extension until November 18, 2022, to file his Concise Statement. Appellant filed a timely Concise Statement of Matters Complained of on Appeal on November 17, 2022, which raises the following issues *verbatim*:

1. The conviction for possession with intent to deliver a controlled substance, heroin, was not supported by sufficient evidence.

---

[2] 35 P.S. § 780-113(a)(30)
[3] 35 P.S. § 780-113(a)(30)
[4] 18 Pa.C.S. § 903
[5] 35 P.S. § 780-113(a)(15)
[6] 35 P.S. § 780-113(a)(32)
[7] 18 Pa.C.S. § 7512(a)

5

2. The conviction for possession with intent to deliver a controlled substance, methamphetamine, was not supported by sufficient evidence.

3. The conviction for criminal conspiracy was not supported by sufficient evidence.

4. The conviction for possession of a controlled substance was not supported by sufficient evidence.

5. The conviction for possession of paraphernalia was not supported by sufficient evidence.

6. The trial court erred in denying the Motion to Suppress the search of Appellant because there was no probable cause to arrest Appellant.

7. The trial court erred in denying Appellant's motion in limine to refer to his trial counsel as a public defender.

8. The trial court erred in permitting Officer Farnan to testify regarding the contents of surveillance video whish was not preserved in violation of the best evidence rule.

9. The trial court erred in permitting testimony of Detective Eisenhauer because it went beyond the scope of expert testimony and usurped the fact-finding function of the jury.

10. The trial court abused its discretion in sentencing Appellant because the sentence exceeds what is necessary to protect the public.

11. The trial court abused its discretion in sentencing Appellant because the sentence exceeds what is necessary to rehabilitate Appellant.

12. The trial court abused its discretion in sentencing Appellant because the sentence fails to take into consideration Appellant's Age, conduct, character,

6

criminal history, the impact of Appellant's actions on the community, Appellant's rehabilitative needs, and the Sentencing Guidelines.

13. The trial court abused its discretion in sentencing Appellant because the trial court relied on improper factors.

14. The trial court abused its discretion in sentencing Appellant because the trial court failed to adequately state the reasons for the sentence on the record.

15. The trial court abused its discretion in sentencing Appellant because the trial court failed to consider mitigating factors.

16. The trial court abused its discretion in sentencing Appellant because the trial court relied on factors already contemplated by the Sentencing Guidelines.

17. The trial court abused its discretion in sentencing Appellant because the sentence was manifestly excessive.

18. The trial court abused its discretion in sentencing Appellant in the high end of the aggravated range of the Sentencing Guidelines.

## DISCUSSION[8]

I.    **Sufficient evidence was presented at trial to find Appellant guilty beyond a reasonable doubt for all Counts**

Appellant first challenges the sufficiency of the evidence supporting the verdict for Counts 1 through 5. The standard of review in assessing a challenge to the sufficiency of evidence is well settled in Pennsylvania. *See* Commonwealth v. Hunzer, 868 A.2d 498, 505 (Pa. Super. 2005). The standard to be applied in reviewing the sufficiency of evidence "is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient

---

[8] Due to factual and legal interrelationships, some of the grounds for appeal are responded to collectively for efficiently explaining this Court's reasoning.

evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." Commonwealth v. Distefano, 782 A.2d 574, 582 (Pa. Super. 2001).

In reviewing this Court's determination that the evidence adduced at trial was sufficient to support a verdict of guilty on all charges, it must be noted "that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover…the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *See* Id.

However, Appellant's bare assertion that each conviction "was not supported by sufficient evidence" fails to provide the requisite specificity for this Court to respond without speculating on what Appellant's claim is. *See* Commonwealth v. Flores, 921 A.2d 517, 522 (Pa. Super. 2007) ("If Appellant wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal.").

A non-specific statement may be sufficient in simple trials where there are only few elements at issue. However, each determination that Appellant committed the charged crimes required that multiple separate elements of the offence be established. This Court cannot assume to know what elements or factors that Appellant believes were not sufficiently established, other than Appellant's identity as the perpetrator. As such, Appellant's claim for insufficient evidence is waived due to the inadequate 1925(b) statement.

In the event that these issues are not considered waived, this Court will address the issues and finds that each of Counts 1 through 5 was fully established at trial.

**a. Sufficient evidence was presented at trial to find Appellant guilty beyond a reasonable doubt of Possession with the Intent to Distribute a Controlled Substance**

Appellant was found guilty in Counts 1 and 2 of violating 35 P.S. § 780-113(a)(30), which states:

> (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:
>
> ***
>
> (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

At trial, Appellant did not dispute that: (a) the compounds recovered by the police from Room 348 of the Holiday Inn Express in Bensalem were controlled substances pursuant to The Controlled Substance, Drug, Device, and Cosmetic Act, 35 P.S. §§ 780-1 – 780-144, ("the Act"); (b) Appellant was not a person entitled under the Act to possess said controlled substances; and (c) based on the amount of the controlled substances and their packaging, whomever possessed them did so with the intent to deliver. In fact Appellant conceded the above in argument to the jury. N.T. 4/13/2022, p. 43. As such, for determining whether Appellant committed the crimes charged in Counts 1 and 2, the question for the jury was solely whether Appellant "possessed" the controlled substances.

Actual, physical, possession is not the only method in which a party can "possess" narcotics with the intent to distribute. Contraband can be actually/physically possessed by a person,

9

constructively possessed by a person, or jointly constructively possessed amongst multiple people. As our Supreme Court has explained:

> [T]he tripartite legal requirements for a finding, beyond a reasonable doubt, that a defendant constructively possessed an illegal substance[ are:] 1) the defendant's ability to exercise a conscious dominion over the illegal substance; 2) the defendant's power to control the illegal substance; and 3) the defendant's intent to exercise that control.

Commonwealth v. Johnson, 26 A.3d 1078, 1086 (Pa. 2011) (*citing* Commonwealth v. Valette, 613 A.2d 548 (Pa. 1992)). A person's ability to have conscious dominion over illegal substances and their intent to exercise control over the same may be inferred from examining the totality of the circumstances. Commonwealth v. Cash, 367 A.2d 726, 729 (Pa. Super. 1976); Commonwealth v. Macolino, 469 A.2d 132, 134 (Pa. 1983).

This court is aware that a person's mere equal access to the area where illegal contraband is found does not establish that person's *per se* power or intent to control said contraband. Commonwealth v. Heidler, 741 A.2d 213, 216 (Pa. Super. 1999). However, neither is it irrelevant:

> a jury need not ignore presence, proximity and association when presented in conjunction with other evidence of guilt. Indeed, presence at the scene where drugs are being processed and packaged is a material and probative factor which the jury may consider. Drug dealers of any size and [illegal drug] manufacturers probably are reticent about allowing the unknowing to take view of or assist in the operation.

Commonwealth v. Vargas, 108 A.3d 858, 869 (Pa. Super. 2014) (*citing* United States v. Robinson, 978 F.2d 1554, 1557-1558 (10th Cir. 1992)). And Appellant was not merely nearby Mr. Rosales during these events. Appellant travelled approximately one-and-a-half-thousand (1,500) miles from Fort Worth, Texas to Bensalem, Pennsylvania, a trip which took roughly twenty (20) hours. N.T. 4/12/2022, p. 72. Appellant carried the black backpack in which the drugs were found into the hotel room Mr. Rosales rented for only one day. N.T. 4/11/2022, p. 54. Appellant was with Mr. Rosales throughout the entire day. N.T. 4/11/2022 *passim*; N.T. 4/12/2022, *passim*; N.T. 4/13/2022, *passim*. Appellant drove Mr. Rosales to the initial "sample" transaction, lasting only

10

between 90 seconds and two of minutes, before turning around and driving to a restaurant located adjacent to the hotel they had left. 4/12/2022, p. 97 – 128. Even further, Appellant was inside the hotel room while Mr. Rosales spent hours setting up the bulk narcotics sale, not only via text messages, but also aloud via phone calls. N.T. 4/12/2022, pp. 124 – 125. This is not an instance where Appellant's ability to have conscious dominion over the contraband or Appellant's intent to exercise control over the same is merely inferred by operation of law, but rather both are inextricable conclusions stemming from an examination of the circumstances. Further, the evidence presented showed that Appellant had the power to exercise control over both the heroin and the methamphetamine recovered from the black bookbag recovered from inside the toolbox in Room 348 of the Holiday Inn Express in Bensalem.

Moreover, in cases involving Possession with Intent to Distribute and related Conspiracy charges, "successful proof of a conspiracy makes each co-conspirator fully liable for all of the drugs recovered, without the necessity of proving constructive possession." Commonwealth v. Perez, 931 A.2d 703, 709 (Pa. Super. 2007) (citing Commonwealth v. Holt, 711 A.2d 1011, 1017 (Pa. Super. 1998)). A conspiracy can be established by the "web of evidence" established by the conduct of the co-conspirators along with the circumstances surrounding said conduct. Commonwealth v. Morton, 512 A.2d 1273, 1275 (Pa. Super. 1986). Resultingly, both of Appellant's Possession with the Intent to Distribute convictions are established by establishing Count 3, the Criminal Conspiracy between Appellant and Mr. Rosales, discussed *infra*.

When this evidence, and the reasonable inferences drawn therefrom, is viewed in the light most favorable to the Commonwealth as the verdict winner, the existence of a conspiracy between Appellant and Mr. Rosales to distribute the drugs establishes that Appellant possessed the is

11

sufficient to establish that Appellant possessed the controlled substances with the intent to distribute them beyond a reasonable doubt.

Therefore, sufficient evidence was provided at trial to establish the violations of Counts 1 and 2.

### b. Sufficient evidence was presented at trial to find Appellant guilty beyond a reasonable doubt of Criminal Conspiracy

Appellant was found guilty in Count 3 of violating 18 Pa.C.S. § 903 (in reference to Counts 1 and 2), which states:

> (a) Definition of conspiracy. — A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.
>
> ***
>
>> (e) Overt act. — No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

Appellant and Mr. Rosales's long drive from Texas to Bensalem– over twenty hours – followed immediately by a drug sample transaction, a subsequent negotiation for a bulk narcotics sale, renting a hotel room for a single day, and attempted flight before his arrest create the sort of "web of evidence" that establishes Appellant and Mr. Rosales conspired for the purpose of the illegal sale of controlled substances in Pennsylvania. N.T. 4/13/2022, pp. 172 – 173. Mr. Rosales provided the CHS with sample drugs and Mr. Rosales' D.N.A. was found on the drug packaging recovered from Room 348. N.T. 4/12/2022, p. 212; C-14. Beyond Mr. Rosales' overt acts, Appellant personally drove his co-conspirator to the sample drug transaction. N.T. 4/12/2022, pp. 104 – 147. When this evidence, and the reasonable inferences drawn therefrom, is viewed in the

12

light most favorable to the Commonwealth as the verdict winner, it is sufficient to establish that both Appellant and Mr. Rosales conspired to travel to Pennsylvania for the purpose of distributing bulk narcotics and committed multiple overt acts in furtherance thereof.

Therefore, sufficient evidence was provided at trial to establish the violation of Count 3.

### c. Sufficient evidence was presented at trial to find Appellant guilty beyond a reasonable doubt of Possession of a Controlled Substance

Appellant was found guilty in Count 4 of violating 35 P.S. § 780-113(a)(16), which states:

> (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:
>
> ***
>
> (16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

Appellants Possession of a Controlled Substance was established *supra*, Discussion Section I(a). Therefore, sufficient evidence was provided at trial to establish the violation of Count 4.

### d. Sufficient evidence was presented at trial to find Appellant guilty beyond a reasonable doubt of Possession of Paraphernalia

Appellant was found guilty in Count 5 of violating 35 P.S. § 780-113(a)(32), which states:

> (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:
>
> ***
>
> (32) The use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.

"Drug paraphernalia" is defined under the Act as:

13

"Drug paraphernalia" means all equipment, products and materials of any kind which are used, intended for use or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act. It includes, but is not limited to:

***
(5) Scales and balances used, intended for use or designed for use in weighing or measuring controlled substances.

35 P.S. § 780-102.

To convict Appellant for Possession of Paraphernalia, the Commonwealth was required to establish that Appellant possessed drug paraphernalia and "the use of, or possession with intent to use, drug paraphernalia for the purpose of … compounding, … processing, preparing, … packing, repacking, … or otherwise introducing into the human body a controlled substance in violation of this act". 35 P.S. § 780-113(a)(32). Among the items recovered from Room 348 was a digital scale with residue on it that tested positive for controlled substances, found in close proximity to the bulk drugs. N.T. 4/12/2022, p. 255. Further, thin plastic found inside a nearby trashcan suggested further that the bulk drugs had been repackaged into the samples inside the hotel room. N.T. 4/13/2022, pp. 28 – 29; C-21. When this evidence, and the reasonable inferences drawn therefrom, is viewed in the light most favorable to the Commonwealth as the verdict winner, it is sufficient to establish that Appellant possessed paraphernalia in contravention of the Act, and, therefore, sufficient evidence was produced at trial to find Appellant guilty beyond a reasonable doubt of committing the crime as alleged in Count 5.

Accordingly, this Court submits that Appellant's first five allegations of error are without merit and should be dismissed.

14

**II.** **The trial court did not abuse its discretion in denying Appellant's Motion to Suppress the $3,300 found on Appellant and Appellant's flight incident to his Arrest as Probable Cause Existed to Arrest Appellant**

"Probable cause exists if the facts and circumstances within the knowledge of the police officer at the time of the arrest are sufficient to justify a person of reasonable caution in believing the suspect has committed or is committing a crime." Commonwealth v. Burnside, 625 A.2d 678, 681 (Pa. Super. 1993). If someone is arrested without probable cause the "fruits" of that search must be suppressed and disregarded in a criminal proceeding, and no "good faith exception" exists in the state of Pennsylvania to the requirement. Commonwealth v. Hopkins, 164 A.3d 1133, 1137 (Pa. 2017). Moreover, this Court is aware that probable cause for an arrest requires more than merely being near a person to which there exists probable cause of suspected criminal activity (but such is not what the evidence in this case demonstrates.) U.S. v. Butts, 704 F.2d 701, 704 (3d Cir. 1983); *see also* Ybarra v. Ill., 444 U.S. 85, 91 (1979) ("[A] a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.").

Before police arrested Appellant as he exited the Holiday Inn Express in Bensalem, they had observed him drive Mr. Rosales' truck to Philadelphia, Mr. Rosales leave the passenger seat of the truck, enter another vehicle, hand narcotics to a Confidential Human Source of the Federal Bureau of Investigation ("CHS"), Appellant drive the vehicle back to the Holiday Inn in Bensalem where Mr. Rosales had rented a room after making two stops, both Appellant and Mr. Rosales exit the truck and enter Room 348, both Appellant and Mr. Rosales leave Room 348 to look up and down the hallway over the next few hours, and Appellant and Mr. Rosales leave Room 348 in time to get to a narcotics transaction as scheduled between Mr. Rosales and the CHS. Appellant was inside the hotel room with his co-conspirator as Mr. Rosales made phone calls setting up the bulk

15

drug transaction. N.T. 4/12/2022, pp. 124 – 125. Under these circumstances, it strains credulity to suggest that Appellant was somehow not participating in the narcotics transaction but that he was also wholly unaware that it was to occur. The police not only had probable cause to arrest Appellant for the planned bulk drug transaction, they had probable cause to arrest Appellant for the *prior* "sample" drug transaction in Philadelphia.

Accordingly, this Court submits that Appellant's sixth allegation of error is without merit and should be dismissed.

**III.    The trial court did not abuse its discretion in denying Appellant's Motion in Limine to Refer to Defense Counsel as a Public Defender**

The standard practice of courts in his Commonwealth is to avoid references to defense counsel as a public defender if possible. Whatever the rationale, be it fear of the jury making decisions based on the defendant's perceived economic status, a societal assumption that an innocent individual would hire a private attorney, or otherwise, the understanding that this Court has is that the defense counsel's status as a public defender or private counsel is, at best, irrelevant to the determination of the ultimate case.

This Court is aware that the courts of Pennsylvania have held that the *inadvertent* disclosure of defense counsel as a public defender has been held to be "insignificant and does not violate equal protection". Commonwealth v. Palm, 903 A.2d 1244, 1247 (Pa. Super. 2006) (*citing* Commonwealth v. Dunson, 11 Phila. 339 (Pa. Com. Pl. 1984)). However, in this case, defense counsel filed a Motion in Limine for permission to *actively* inform the jury of their status, seemingly for the purpose of having the jury assume that Appellant cannot be a drug dealer, as he would then have the funds to hire private counsel.

Defense counsel did not provide, and this Court is unaware of, any law in this Commonwealth establishing that such an action is permissible. Further, this Court found that

16

stating to the jury that defense counsel was a public defender risked confusion and the jury making a finding based not on the facts presented, but rather Appellant's perceived economic status. Even beyond this Court's concerns, Appellant himself seemed reluctant to proceed down this route. When asked by the court "do you want me to allow [Defense Counsel] to tell the jury that he's a public defender?", Appellant replied, "I mean, do we have to?" N.T. 4/11/22, p. 7.

Accordingly, this Court submits that Appellant's seventh allegation of error is without merit and should be dismissed.

## IV. The trial court did not abuse its discretion in permitting Officer Farnan to testify regarding the contents of surveillance videos

During the suppression hearing, defense counsel objected to Bensalem Township Police Department Officer Connor Farnan testifying as to what he observed on surveillance videos from the Holiday Inn Express as violative of the Best Evidence Rule in that certain surveillance videos were not preserved and provided to the defense. N.T. 4/11/22 p. 23. Specifically, Defense counsel was not provided videos from December 4, 2020 at approximately 9:00 A.M. to approximately 1:00 P.M.. N.T. 4/11/22 pp. 23 – 25. The objection was overruled and the question rephrased to elicit answers from Officer Farnan regarding surveillance videos from roughly 8:30 A.M. to 9:00 A.M..

At trial, the Commonwealth introduced Commonwealth Exhibit C-6 and C-10, containing surveillance videos of the Holiday Inn lobby and 3rd floor, respectively. Exhibit C-6 contains five videos with visible timestamps[9] from 08:11:01 – 08:14:25, 08:11:01 – 08:14:18, 08:16:34 – 08:17:11, 08:22:20 – 08:25:00 and 08:23:14 – 08:24:06. *See* C-6. Mr. Rosales checks in to the hotel, and then Appellant and Mr. Rosales enter the elevator, carrying various items. Appellant is

---

[9] The video timestamps are in 24-hour time format, often referred to as "military time."

17

seen carrying a black backpack while wheeling an air compressor, while Mr. Rosales maneuvers a large, wheeled toolbox into the elevator. *See* C-6. One black backpack was recovered during the search of Room 348, which contained approximately 100 grams of heroin and 1 kilogram of methamphetamine. N.T. 4/12/2022, p. 225; C-6. Exhibit C-10 contains body-camera recordings of a screen, presumably the surveillance computer's, playing three videos with visible timestamps from 12:56:30 – 12:57:16, 13:00:09 – 13:00:15, and 16:55:12 – 16:55:40. *See* C-10. These videos show Appellant and/or Mr. Rosales walking to and/or from the 3rd floor elevator, and neither Appellant nor Mr. Rosales appear to be carrying any objects in their hands. Defense counsel did not object to the introduction and playing of these videos on the grounds that they were not in the defense's possession. Officer Farnan did not testify regarding surveillance videos ranging from approximately 9:00 A.M. to approximately 1:00 P.M. on December 4, 2020. This is unsurprising, seeing as during that time Appellant and Mr. Rosales were being surveilled by the FBI Task force. N.T. 4/12/2022, pp. 104 – 147. Appellant and Mr. Rosales were engaged in the sample narcotics transaction and then went to the Bob Evans restaurant. N.T. 4/12/2022, p. 128. Officer Farnan did not testify regarding any surveillance videos that were not preserved or not handed over to the defense. As such, Appellant's claim that Officer Farnan's testimony was in contravention of the Best Evidence Rule is meritless.

Accordingly, this Court submits that Appellant's eighth allegation of error is without merit and should be dismissed.

## V.    The trial court did not abuse its discretion in permitting testimony of Detective Eisenhauer

The purpose of expert testimony is to provide the jury with information requiring special expertise or knowledge helpful to their determination of a fact at issue. Pa.R.E. 702. If valuable to the trier of fact, an expert witness may even express an opinion on an ultimate issue of fact. *See*

18

Commonwealth v. Daniels, 390 A.2d 172, 178 (Pa. 1978) (The contention that an expert should never be permitted to express an opinion on an "ultimate issue" is similarly misconceived.). If a witness testifies improperly, potential prejudice can be cured by a timely curative instruction, as "when an objection is sustained and a cautionary instruction is given, and the defendant fails to object to the cautionary instruction or to request any further instruction, counsel is presumed to be satisfied with the cautionary instruction and any prejudice is cured, because we further presume that the jury follows the court's instructions." Mount Olivet Tabernacle v. Edwin L. Wiegand Div., Emerson Elec. Co., 781 A.2d 1263, 1275 n.12 (Pa. Super. 2001) (*citing* Commonwealth v. Jones, 668 A.2d 491, 508 (Pa. 1995), *cert denied*, 519 U.S. 826 (1996)).

Detective Eisenhauer was offered as an expert witness without defense voir dire or objection. *See* N.T. 4/12/2022, p. 266. At trial, defense counsel objected to Detective Eisenhauer's testimony suggesting that there was likely another party who would come to deliver drugs as the narcotics sale orchestrated by the CHS and Mr. Rosales involved drugs in quantities beyond what was recovered from Room 348, which was offered in response to the question "how – is that consistent with the way a drug trafficking organization would operate?" N.T. 4/12/2022, pp. 288 – 291. As the narcotics recovered from Room 348 included 95.89 grams of heroin, but the transaction as negotiated was for two kilograms – 2,000 grams – of heroin, there is an inherent incongruity between the deal as designed and the deal that could actually be satisfied with the contraband already in Appellant and Mr. Rosales's possession. *See* C-17. Defense counsel objected further that Detective Eisenhauer's use of "they" in testifying "I feel very confident that they were going to attempt to set up a distribution hub right in this area from this organization." N.T. 4/12/2022, pp. 295 – 296. This Court gave a curative instruction to the jury, and upon defense counsel's motion, ruled that "[t]o the extent that the word they was brought up, it will be stricken."

19

N.T. 4/12/2022, p. 298. Defense Counsel expressed their satisfaction with this resolution. N.T. 4/12/2022, p. 298.

Appellant did not identify what portion of Detective Eisenhauer's testimony exceeded the scope of proper expert testimony in his 1925(b) statement. However, as this court struck the disputed testimony and provided a curative instruction to the Defense Counsel's satisfaction, any potential prejudice was cured.

Accordingly, this Court submits that Appellant's ninth allegation of error is without merit and should be dismissed.

## VI. The trial court did not abuse its discretion when sentencing Appellant

Appellant had a prior record score of 5, stemming from prior convictions in the State of Texas. N.T. 7/15/2022, p. 7. Appellant had a 2007 conviction for a misdemeanor analogous to Theft from a Motor Vehicle, two simultaneous 2008 convictions for the same, a 2010 conviction for DUI, a 2013 conviction for a crime analogous to second-degree felony Aggravated Assault, and a 2017 conviction for second-degree felony Aggravated Assault. N.T. 7/15/2022, pp. 7 – 10. Appellant was completed his sentence for the 2017 conviction roughly 8 months prior to his behavior incident to his arrest. N.T. 7/15/2022, p. 10.

The guidelines for Count 1, Possession with Intent to Deliver a Controlled Substance—Heroin had a standard range sentence of 60 to 72 months and an aggravated range of 84 months for possession of slightly over 95 grams of heroin. N.T. 7/15/2022, pp. 29 – 30. These guidelines were for possession of between 50 and 100 grams of heroin. Appellant was sentenced on Count 1 to not less than 7 years, no more than 15 years, within the aggravated range. N.T. 7/15/2022, p. 43.

The guidelines for Count 2, Possession with Intent to Deliver a Controlled Substance—Methamphetamine, were for 60 months to 60 months as the amount possessed was between 100

20

and 1,000 grams of methamphetamine. N.T. 7/15/2022, p. 29. Appellant possessed 957+ grams of methamphetamine, just below the top end of the range. The standard range for the methamphetamine charge is the maximum permitted by law on that count. N.T. 7/15/2022, p. 29. Appellant was sentenced on Count 2 to not less than 5 years, no more than 10 years, concurrent to Count 1, within the standard range. N.T. 7/15/2022, p. 43.

Appellant was sentenced on Count 3 to 5 years of probation running consecutive to Count 1. N.T. 7/15/2022, p. 44. This was below the standard range of 60 months and the mitigated range of 60 months.

Appellant was sentenced to no further penalties on Counts 4 and 5 as they either merged or any sentence imposed would have been redundant. N.T. 7/15/2022, p. 44.

Throughout the Sentencing Hearing, this court explained the how it took into consideration Appellant's Age, conduct, character, criminal history, the impact of Appellant's actions on the community, Appellant's rehabilitative needs, the Sentencing Guidelines, the mitigating and aggravating factors present, Appellant's behavior at trial, and the letters from his mother and sister. *See* N.T. 7/15/2022, pp. 4 – 13, 36 – 46; Sentencing D-1 and D-2. This Court also considered Appellant's two prior convictions for crimes of violence and that he was arrested only roughly 8 months after completing supervision for his second aggravated assault conviction in Texas. See N.T. 7/15/2022, pp. 10, 40. Further, the impact these drugs have had in the local community, Appellant's boldness in driving up from Texas to distribute bulk quantities, the fact that the quantities of drugs recovered were just underneath the next level of the guidelines for both Counts 1 and 2, and his continued lack of any acceptance of responsibility were considered. N.T. 7/15/2022, pp. 36, 39, 42. Only after considering all of these factors, this Court found that Appellant's actions required a sentence be imposed in the aggravated range. N.T. 7/15/2022, p. 42.

21

Accordingly, this Court submits that Appellant's tenth through eighteenth allegations of error are without merit and should be dismissed.

## CONCLUSION

Based on all of the forgoing, this Court respectfully submits that Appellant's eighteen issues on appeal are without merit. Furthermore, this Court respectfully submits that the Guilty Verdict of April 13, 2022 by a jury of Appellant's peers, following an exceedingly fair Trial, with qualified Trial Counsel representing his interests, should be affirmed. Lastly, it is respectfully submitted that this Court's July 15, 2022, Sentencing Order, which followed a comprehensive review of all relevant sentencing information, and which had followed the Appellant's conviction based on overwhelming evidence of guilt that Appellant committed the crimes of Possession with Intent to Deliver a Controlled Substance—Heroin[10], Possession with Intent to Deliver a Controlled Substance—Methamphetamine[11], Criminal Conspiracy— Possession with Intent to Deliver a Controlled Substance—(a) Heroin and (b) Methamphetamine[12], Possession of a Controlled Substance—(a) Heroin and (b) Methamphetamine[13], and Possession of Paraphernalia[14] should also be affirmed. Accordingly, this Court respectfully requests that all issues raised by Appellant be determined to be without merit and that Appellant's appeal be dismissed in its entirety.

BY THE COURT:

Date: 12/15/2022

BRIAN T. McGUFFIN, JUDGE

---

[10] 35 P.S. § 780-113(a)(30)
[11] 35 P.S. § 780-113(a)(30)
[12] 18 Pa.C.S. § 903
[13] 35 P.S. § 780-113(a)(15)
[14] 35 P.S. § 780-113(a)(32)

22

## PROOF OF SERVICE

I hereby certify that I served this day the foregoing documents upon the persons and in the manner indicated below, which service satisfies the requirements of Pa. R.A.P. 121:

Service in person
  as follows:

Hon. Brian T. McGuffin
(215) 348-6606
Judges Chambers
Bucks County Justice Center
Doylestown, PA 18901

Matthew Weintraub
District Attorney
(215) 348-6344
District Attorney's Office
Bucks County Justice Center
Doylestown, PA 18901
Attorney for Appellee

DATED: __1/30/23__    BY:_____
                        CHRISTA S. DUNLEAVY
                        CHIEF DEPUTY PUBLIC DEFENDER
                        ATTORNEY ID #76134
                        PUBLIC DEFENDER'S OFFICE
                        BUCKS COUNTY JUSTICE CENTER
                        DOYLESTOWN, PA 18901
                        (215) 348-6473
                        EMAIL: slspickler@buckscounty.org
                        ATTORNEY FOR APPELLANT